Good morning. Before calling the first matter on calendar, if I may, just remind the Council for Appellants that our clocks don't recognize your desire to have time left for rebuttal. They just run straight down. So you have to take your own, you do have to do your own math if you don't want to be disappointed at the end of the day. And Mr. Kramer, I guess a question that we would have for both of you is that we're aware that McCoy has priority with respect to this panel on a whole lot of the issues that appear to be raised in common in this case and in McCoy. So we would invite your input on whether we simply should defer our submission and wait for the McCoy opinion to come down, except on the Washington CPA issue and one of the Delaware names. With regard to McCoy, there is a difference between McCoy and this case because this case is involving a Bank One contract. Chase purchased Bank One, so we're dealing here with a Bank One contract. There are some substantial differences. There are some substantial overlaps. That's what I would have to say. Before you proceed, perhaps it would be a good idea for you to identify yourself, Mr. Kramer. Yes. I'm Barry Kramer on behalf of Appellants and Plaintiffs. And then you better explain because I don't quite follow that. There's a lot of overlap because the contracts are similar. But the contract in the Penner case is different from the contract in the McCoy case. It may be, but isn't the common issue on whether Tyler is free ounce? I would say that there are certainly many common issues, yes. We wouldn't be able to go forward. You are saying there are substantial overlaps. So whatever McCoy says will be binding, at least in part, on this panel with respect to analyzing this case. I believe that would be the case. So the answer to Judge Reimer's question about deferring submission would be that would be a good idea, it sounds like. I think so, yes. Thank you. Okay. This case is about Chase's retroactive rate increases. Essentially, you get a billing statement a few months. We know pretty much about the case. One thing that would be useful, since you have limited time, could you address, because I didn't see anything in your briefs, any discussion on the preemption issue with respect to the Delaware common law claims or to the Consumer Protection Act? Sure. First, the preemption claims, they don't cover the TILA violation, which is a disclosure violation. They don't cover the contract breaches that we've talked about. There is no preemption. What I was asking was with respect to the Delaware common law claims and the Washington Consumer Protection Act claim. Yes. With regard to those, to the extent that you're talking about a disclosure violation, the TILA would preempt the Delaware law. And to the extent that you're talking about Delaware law, we feel there is a Delaware law violation. Essentially, Delaware law says that you must have a rate increase based on a formula or schedule. While a default can be a formula or schedule, it has to be contingent on that default. And in this case, there is no contingency in Chase's agreement. So we respect the Delaware law. However, there is no violation of it here. That would be my position as to the preemption aspects. Delaware law would control over the Washington state law, except that it's not applicable because there's no formula or schedule with regard to the rate increase. Okay. I'm confused. Bottom line, did you say that there was preemption of the Delaware claim or not? Well, this case, I believe, would be subject to Delaware state law to the extent that certain aspects of it can be exported. Okay. For the moment, we're not talking about exporting. We're talking about whether there's federal preemption of the Delaware claim, regardless of its effect on Washington law. The federal preemption for disclosure requirements, yes. Federal preemption with disagreements between the National Bank Act and Delaware law, yes. But here we see no disagreement between any federal law and any Delaware law. We accept they both cover disclosure. Well, certainly the federal law is preemptive with regard to disclosure. The TILA regulations would preempt any differing state laws. Okay. In this case, Chase is essentially giving two sets of arguments. They're saying that a bunch of cases have come down in their favor, but these cases are essentially clones of the Evans case, which had some major difficulties in it. The Evans case had its facts wrong, and it had several issues of law that were incorrect. The other basic argument that Chase is giving is that the Federal Reserve Board supports its opinion, and essentially the Federal Reserve Board's official opinions are its regulations and its commentary. Both of those fully support plaintiff's position here. The best case to look at is the Shainer case, which gives a full description of the situation both with the contract and with the law. The Shainer case is a federal case out of Massachusetts by Judge George Otuo. It essentially says that Chase did not give the specific term for the rate increase. It says it might increase. It might not. It does not take away its discretion. Chase has full discretion. It can increase the rate every time there's a default or never. That's 100 percent discretion. Comment three is directly applicable, and section 226.9c1 says very simply, if a periodic rate is increased because of the consumer's delinquency or default, written notice of the increase shall be given before the effective date of the change. The commentary repeats that language, as Chase acknowledges. That's what you have to interpret. That's really what this case is about. You must interpret this regulation, and it says if the periodic rate is increased because of the consumer's delinquency or default, written notice of the increase shall be given before the effective date of the change. Now, that's what the Federal Reserve Board officially says. Chase has pointed out a section from a discussion in proposed rules which says essentially the same thing, that notice must be given if there's a default or delinquency, but you don't need to have a change in terms 15-day in advance notice. What this means is that Chase is not required to give a 15-day advance notice of this change in terms of it being a change in the contract, because there is no change in Chase's contract when it increases a rate, as long as the contract permits the rate increase. So you have this odd sort of language where the Federal Reserve Board, the discussion says, A, they need to give a notice of the rate increase. B, they don't need to change the terms of their contract. That's what it says. Chase is trying to say that it says you need to give a notice, and then a minute later it says, no, you don't need to give a notice. It's not the same notice. One is notice of a rate increase. The other is changing the terms of the written credit card agreement. In this case, there are three different breaches, three items alleged, a breach of contract, because this contract, which is a Bank One contract, it's in our excerpts of record under, I think, section 21.2. It states specifically that Chase will give you notice of any change in the rates. It says that exactly, almost word for word. Second, you have the TILA disclosure violation. Third, you have an independent violation, which is an illegal rate increase. When you have a retroactive increase, it instantly adds damages. The moment they do that at the end of the month, they say, we're going to go back, change the rate effective a month ago. That is an illegal penalty. It's not a disclosure violation. It's not a contract violation. That's really your Delaware law, your Washington Unfair Practices Act, an illegal penalty wherever you are. And those are the three separate violations. In this case, Chase has confused basically two different statutes within the regulations 226A2, which is an initial disclosure where Chase complies with that. It tells you we can increase your rates if there's a default. The regulation they don't comply with is 2269C1, which says we must give you notice of a rate increase before the increase is effective. And there can't be any question but that they violate that provision. All of their arguments, they're like essentially cotton candy. They say the comment 3 just repeats the regulation. That's not an argument. That's true. Mr. Kramer, your time has expired. Thank you for your argument. Ms. Thomas. Good morning, Your Honors. Nancy Thomas on behalf of Chase Bank. And I'll start with the question you posed, Judge Rimer, which is whether or not this Court, this general rules that the McCoy panel has priority, but I'll bring you back a little further. There's no dismute among the parties that the TILA claim and all the common law claims are identical between Evans, McCoy, and Penner. Evans, the panel, which was Judges McEwen, Talman, and Silverman, heard oral argument, affirmed the dismissal with prejudice in a memorandum disposition. The parties had agreed to stay the other two appeals pending the decision in Evans. The Evans decision came down, and appellants counsel decided to go ahead with these appeals anyway. So the McCoy panel certainly did not defer to the Evans panel. Well, that's not binding. That's right. If it's a memo disposition, it's not binding. And, Judge Fischer, you all may know something I don't know in terms of what it is the McCoy panel is going to do and the kind of opinion they're going to issue. But what I can say is the McCoy appeal went forward, and the McCoy panel heard oral argument, is going to issue a decision, even though the issue had already been decided by the Evans panel. And I would think the same thing would apply here. As far as the overlap, as you explained, Judge Rimer, there's a Washington State law claim here that didn't exist in the other case. There is a different contract here, although the theory that appellants have pled in their complaint is the same, which is that the contract requires compliance with Federal law. And that is the same as in McCoy. I agree, though, that appellants' argument here has morphed for their breach of contract claim. Again, though, I think so it is possible, depending on whether or not this Court, this panel, thinks that the argument was waived, that there is a contract issue here that is not present in McCoy, and I'll address that. But I agree, Judge Fischer, that all of these, that the common law claims are all preempted under Federal law, expressly preempted by OCC regulation, also preempted by the national bank act. And so in that sense, there is overlap, even though there's a Washington State claim here that is not the same as it is in McCoy. So why don't I go ahead and address first the contract issue, because I think it's very straightforward. If you read appellant's complaint, they had not seen this contract document, is my guess, when they pled their complaint. And what they plead in the complaint is very clear. It is that the contract requires Chase to comply with Federal law. It has not complied here. Therefore, there's a breach of contract. And as we've argued in our papers, the problem with that theory is twofold. One, there's no violation of Federal law. And two, there is a preexisting duty rule under Delaware law. You can't contract for something that you have a preexisting duty to do. And the case that we cite in our papers is a case where the contract provided that the other party would comply with Federal securities laws, and the Delaware court said, no, that's not an enforceable provision in a contract. The claim that appellants, we think, have created on appeal that was not preserved below is that this contract is different, and it requires notice of any change whatsoever, and just reading the plain language of the contract shows that that's not the case. It says we can at any time change this agreement, including the annual percentage rate and any fees, and can delete provisions, et cetera, and enforcement Let me just read the whole thing. It will be easier. What are you reading from? I am reading from, this is in tab 22, which is Chase's contract here, the initial card member agreement. We can at any time change this agreement, including the annual percentage rate and any fees, and can delete provisions relating to your account and to the nature, extent, and enforcement of the rights and obligations you or we may have relating to this agreement. We will notify you of any change, addition, or deletion. The change is referring back to the previous sentence. We can at any time change this agreement. Here, there's no change in the agreement. The agreement specifically provides that Chase can increase appellant's interest rate to the maximum default rate upon default. So there's been no breach of contract even under this new theory. Very quickly, I want to address preemption, because I think that it's very straightforward application here, and all of the courts that have considered the preemption argument have actually reached it, have found that these claims are preemption. I point Your Honors to the decision in Yomalacas, which is a decision under the almost identical regulations issued by the Office of Thrift Supervision, and the court found that the illegal penalty and the State consumer protection claim were preempted  And what the court said, and listening to appellant's argument, that the unconscionability claims are based on a so-called illegal penalty. Here, that's a challenge to the amount of interest. If it's an illegal penalty, then the amount of interest is too high. And the courts have made it very clear. Smiley, in fact, which is the Supreme Court case, is an unconscionability case. It was a claim brought as a common law unconscionability case. And the courts have consistently said the amount of interest that a national bank can charge is covered by the National Bank Act, it's exported from their home State, and there is no room for any State law application. Here, then, there's no room for common law unconscionability claims. Here, also, the appellants have not pled any claim under Delaware banking law. Appellant's counsel would have you understand that preemption only applies if there's some difference between the claim that's pled and Delaware banking law. That's not the case. There's no Delaware banking law claim here. And appellants can't, under the guise of some other law, whether Washington law or a common law claim for unconscionability, morph into a Delaware banking claim that might be authorized under the National Bank Act. In addition, the OCC regulations expressly preempt any State law that applies to the areas that are listed, including terms of credit and disclosure and advertising. In the Rose v. Chase Bank case, the Court found that claims brought under the California Consumer Protection Statute requiring additional notice were preempted by the National Bank. And the same applies here. We also argued in our papers there is a preemption analysis that goes along with the Washington Consumer Protection Act. And the case there from the Washington Court of Appeals specifically found the exact same thing. The Office of the Comptroller of the Currency is authorized and does regulate in this area, and so the Washington Consumer Protection Statute is preempted. I'd like to use the rest of my time to talk about the Truth in Lending Act claim, unless Your Honors would like to hear about something else. So I want to discuss a couple of the points that appellants' counsel has made, although really the most important, the overriding issue here is that the Federal Reserve Board has made its views clearly known. Before this case was even filed, the Board saw the issue that the appellants complained of. They sought public comment. They studied it. They issued proposed rules to address it, which they've now adopted. And along the way, the Board has repeatedly explained that the notice appellants seek isn't required by the current rules and will not be required until July of 2010. That's the most important piece of the TILA argument in our view. So appellants' arguments that comment 1 that Chase relies on here, which is, which provides an exception to the notice requirement in 226.9c1, the Board has recently explained in its final rules and also explained in its proposed rules, as we quoted in our papers and in the 28J letter, that comment 1 does apply to the kind of interest rate increase challenged here, one due to delinquency or default. The Board has specifically added a new section, 226.9g1, which, as the Board explained, is an expansion of the circumstances under which banks must give notice, and it specifically provides that where, as here, there's a default interest rate increase, the credit card company must give at least 45 days' notice, even if the specific change is set forth initially in the customer agreement. The Board explained that that was an expansion of the circumstances under which notice was required. The Board also ‑‑ sorry, Your Honor. Thank you very much. Thank you, counsel. I think you both, the manner in which you argued, I appreciate that. And we will next hear argument in Lois v. Boehning. Good morning.
judges: Fletcher, Rymer, Fisher